IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID ROBINSON, III, | : | |
| Plaintiff, | : | |
| | | Case No. 3:12cv00350 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff David Robinson, III sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ("DIB") in May 2009, alleging disability since June 30, 2008. (*PageID##* 185-91). He claims disability from "learning disability due to stroke in 2003, depression, bleeding colitis, [and] sleep apnea." (*PageID#* 214).

After various administrative proceedings, Administrative Law Judge ("ALJ") Amelia G. Lombardo denied Plaintiff's DIB application based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Security Act.  (*PageID##* 78-88).  The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #15), Plaintiff's Reply (Doc. # 17), the administrative record (Docs. # 6-11), and the record as a whole.

## II. BACKGROUND

### A. Plaintiff's Vocational Profile and Testimony

Plaintiff was 46 years old on his alleged onset date of disability and is thus considered to be a "younger person" for purposes of resolving his DIB claim.  *See* 20 C.F.R. § 404.1563(c); *see also PageID##* 86, 185.  Plaintiff has a "limited" education. (*PageID##* 86, 219).  He has worked as a truck driver and custodian.  (*PageID##* 86, 215).

Plaintiff testified that he resides in an apartment with his wife and kids. (*PageID##* 102-03).  He testified that his wife works and he cares for their three children. (*PageID##* 103, 112).  He drove himself to the hearing.  (*PageID#* 103).  At the time of the hearing, he was working on obtaining his GED.  (*PageID#* 106).  Plaintiff indicated that he goes to GED classes twice a week.  (*PageID#* 107).

Plaintiff described his mental symptoms as "like, suicide, crying, sadness, just not easy to deal with, [and problems with reading comprehension]." (*PageID#* 112). He further noted he experiences anxiety attacks about once a month. (*Id.*).

During a typical day, Plaintiff testified that he gets his kids off to school and naps during the day. (*PageID##* 113-14). He testified he has trouble sleeping, and that his medications cause drowsiness. (*PageID#* 113).

**B.     Vocational Expert Testimony**

A Vocational Expert ("VE") testified at the hearing and classified Plaintiff's past employment (as a truck driver and custodian) as semi-skilled and performed at the medium level. (*PageID#* 120). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's "age, educational background and work experience" who could only do simple repetitive tasks that are low stress, which is no assembly line production quotas and not fast paced. (*Id.*). The VE responded that Plaintiff could not perform his past relevant work, but there were 21,000 jobs at the medium exertion level and 34,700 such jobs at the light exertion level in the region the hypothetical worker could perform. (*PageID#* 108).

When cross-examined by Plaintiff's counsel, the VE acknowledged that if an individual routinely took two to three times longer to perform any given task, it would "absolutely" present a problem with maintaining employment. (*PageID##* 121-22).

C.  **Relevant Medical Opinions**[2]

1.  **Bill Smith, Ph.D.**

Dr. Smith evaluated Plaintiff on June 29 and July 2, 2009, on referral from his family physician, Dr. Vyas.  (*PageID##* 361-71).  Plaintiff was evaluated to determine his cognitive strengths and deficits.  Plaintiff related that since his stroke in 2003, he experienced more problems with verbal and auditory comprehension; focusing; learning and remembering information; and slowed recall.  Before his neurological episodes, Plaintiff related that he had been a slow learner in school and dropped out in twelfth grade.  He was married for seventeen years and had three children.  He related feeling depressed.  (*PageID#* 362).  He also had problems with his GED classes.

During the evaluation, Dr. Smith noted that Plaintiff's processing speed was quite slowed; he appeared to have some difficulty following multiple-step commands, as well as comprehending and following test directions.  Simplification of directions, use of examples, and extended practice were often necessary to allow Plaintiff to be able to perform the basic testing tasks.

Dr. Smith found Plaintiff's affect was blunted during the evaluation.  Plaintiff indicated that he had difficulty sleeping through the night.  Plaintiff reported his appetite as intact.  Plaintiff's psychomotor rate was slowed and within normal limits; no

---

[2]In addition to mental impairments, the undersigned recognizes that Plaintiff alleges disability in part because of his physical impairments.  Plaintiff's Statement of Errors, however, focuses primarily on Plaintiff's mental impairments and limitations.  Accordingly, the Court will likewise focus its review of the medical evidence on Plaintiff's mental impairments and limitations.

hallucinations or delusions were reported; and no suicidal ideation, intent, and/or plan were present.

Wechsler Adult Intelligence Scale - III (WAIS-III) testing was administered during that examination and revealed the following IQ scores: 74 - Verbal; 72 - Performance; and 70 - Full-Scale.  Dr. Smith also reported that Wide Range Achievement Test (WRAT-IV) results revealed Plaintiff scored at the fourth percentile on word reading, fifth percentile on sentence comprehension, third percentile on reading composite, second percentile on spelling, and fifth percentile on arithmetic.  (*PageID#* 365).  Plaintiff scored in the fifth percentile on Visual Reproduction 1 and in the fifteenth percentile on the Visual Reproduction 2.  During testing, Plaintiff demonstrated slow processing speed and some difficulty with multi-step commands, as well as comprehending and following test procedures.  (*PageID#* 363).  With simplification of test directions, use of examples, and extended practice, however, it was noted that Plaintiff was able to perform basic testing tasks.  (*PageID##* 363, 366).  Dr. Smith found that Plaintiff demonstrated decreased performance on testing as the level of complexity increased.  (*PageID#* 367).

Dr. Smith diagnosed Plaintiff with the following: Learning Disorder Not Otherwise Specified; Reading Disorder; Cognitive Disorder Not Otherwise Specified; Borderline Intellectual Function; and Adjustment Disorder with Depressed Mood. (*PageID##* 370-71).

Dr. Smith concluded that Plaintiff's "limited attention span and slowed information processing will make it difficult for him to obtain a job where speed of

processing or attention to detail are significant job requirements." (*PageID#* 371).  Based on these assessed restrictions, Dr. Smith ultimately "encouraged the patient to consider applying for Social Security Disability." (Id.)

### 2. Roseann Umana, Ph.D./Carl Tishler, Ph.D.

State agency psychologist, Dr. Umana, reviewed the record on September 22, 2009. (*PageID##* 384-401).  Dr. Umana determined that Plaintiff had mild restrictions in activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and with no episodes of decompensation. (*PageID#* 394).

Dr. Umana also completed a Mental Residual Functional Capacity Assessment where she found that Plaintiff had moderate limitations in his ability to do the following: understand and remember detailed instructions; carry out detailed instructions; and maintain attention and concentration for extended periods. (*PageID#* 398).  Dr. Umana found all other mental work related abilities were either not significantly limited or there was no evidence of limitation. (*PageID##* 398-99).

Dr. Umana concluded that Plaintiff retained the capacity to complete simple, repetitive tasks. (*PageID#* 400).  On February 19, 2010, another state agency psychologist, Dr. Tishler, reviewed the record and affirmed Dr. Umana's opinion. (*PageID#* 403).

## III. ADMINISTRATIVE REVIEW

### A. "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70; *see also* 42 U.S.C. § 423(d)(1)(A). A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.     Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See PageID##* 78-80; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1.     Has the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

    3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

    4.    Considering the claimant's residual functional capacity, can he perform his past relevant work?

    5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

    **C.**    **ALJ Lombardo's Decision**

At the time of ALJ Lombardo's decision, Plaintiff met the insured status requirements of the Social Security Act through March 31, 2013.

ALJ Lombardo's pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff has the severe impairments of borderline intellectual functioning and a cognitive disorder. (*PageID#* 80). The ALJ determined that Plaintiff's mild arthritic changes at the fifth metacarpophalangeal joint, hypertension, diabetes, and sinus problems are "not severe" within the meaning of the Social Security Act. (*PageID#* 81).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings. (*Id.*).

At Step 4, the ALJ evaluated Plaintiff's residual functional capacity ("RFC") and found that Plaintiff can perform a full range of work at all exertional levels, but with the following nonexertional limitations: only simple, repetitive tasks; low stress work defined

8

as work with no assembly line production quotas and work that is not fast paced. (*PageID#* 83).

The ALJ concluded at Step 4 that Plaintiff was unable to perform any of his past relevant work. (*PageID#* 86).

At Step 5, based on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*PageID##* 86-87).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability, and therefore was not eligible for DIB. (*PageID#* 87).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial evidence

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

V.   **DISCUSSION**

Plaintiff does not challenge the ALJ's findings with regard to his physical functioning, nor does he make any allegation of physical restrictions omitted from the ALJ's residual functional capacity (RFC) finding.  Rather, Plaintiff argues that "[t]he overwhelming evidence in the record as a whole supports a finding of disability based on [his] residual cognitive impairments stemming from a stroke he suffered in 2003 combined with his other learning disabilities."  (Doc. #12, *PageID#* 948).  Plaintiff

contends "[t]he ALJ erred in relying upon the opinion of the non-examining State agency reviewing psychologist rather than the findings and opinion of the evaluating neuropsychologist, Dr. Smith . . ." (*Id.*, *PageID#* 949).  As such, Plaintiff believes "[t]he ALJ's decision is not based on substantial evidence and should be reversed." (Doc. #17, *PageID#* 985).  Defendant argues "[t]he ALJ's restrictions are consistent with the findings from the examining psychologist, Bill Smith, Ph.D., and the reviewing state agency psychologists . . ." and the Court should affirm the Commissioner's decision to deny disability insurance benefits to Plaintiff.  (Doc. #15, *PageID#* 973).

       The ALJ concluded that Plaintiff had severe impairments of borderline intellectual functioning and a cognitive disorder, NOS, which limited him to simple, repetitive tasks, and low stress work, defined as work with no assembly line production quotas and work that is not fast paced.  (*PageID#* 83).  In making her RFC finding, the ALJ considered the medical opinions of record, as well as Plaintiff's testimony.  The ALJ essentially adopted the opinions of the state agency psychologists, Drs. Umana and Tishler.  Drs. Umana and Tishler reviewed the evidence and based their evaluation on the impairments of a cognitive disorder, a learning disorder, a reading disorder, an adjustment disorder with depressed mood, and borderline intellectual functioning.  (*PageID##* 385, 387, 388).  Dr. Umana opined that Plaintiff's statements are credible.  Plaintiff described difficulties concentrating, understanding instructions, and completing tasks.  Dr. Umana found these difficulties to be supported by the medical evidence of record.  (*PageID#* 400).  It was noted that Plaintiff could cook, run errands, provide care for his children, take his

children to sports practice, attend doctor appointments, go grocery shopping twice a week, perform household chores, do yard work, go fishing once a month in the summer, pay bills, ride a bike twice a week, attend church, and socialize with friends. (*Id.*). Dr. Umana found Plaintiff is able to complete simple, repetitive tasks. (*Id.*). The ALJ's RFC finding was consistent with the opinions of Drs. Umana and Tishler. To the extent the psychologists of record suggested significant limitations, the ALJ's RFC finding accommodated them.

The opinion of Dr. Smith, a consultative examiner, also provided support for the ALJ's RFC finding. (*PageID##* 82-83). Dr. Smith performed various testing on Plaintiff, including WAIS-III, RBANS, WMS-R, and WRAT-IV. He diagnosed Plaintiff with: Learning Disorder Not Otherwise Specified; Reading Disorder; Cognitive Disorder Not Otherwise Specified; Borderline Intellectual Function; and Adjustment Disorder with Depressed Mood. (*PageID#* 370-71). He found Plaintiff's limited attention span and slowed information processing make it difficult for him to obtain a job where speed of processing or attention to detail are significant job requirements. (*PageID#* 371). The ALJ accommodated Dr. Smith's opinion in her RFC finding, which restricted Plaintiff to simple, repetitive tasks, and low stress work defined as work with no assembly line production quotas and work that is not fast paced. Plaintiff argues the VE's testimony that jobs would be eliminated if the hypothetical worker took "two to three times longer on daily tasks or jobs," indicates there were no jobs that Plaintiff could perform. Plaintiff believes he would fit within such a category, because Dr. Smith observed that he "took

two to three times longer to perform untimed tasks as the typical test examinee." (*PageID#* 363). Yet Dr. Smith's observation relates to Plaintiff's ability to perform tasks on the WAIS-III Processing Speed Index. Dr. Smith did not opine or otherwise indicate that Plaintiff would take two to three times longer to perform daily tasks or jobs. Such a conclusion likewise cannot be inferred based simply on Dr. Smith's testing observation. In fact, Dr. Smith ultimately concluded that Plaintiff's slowed information processing speed would only "make it difficult for him to obtain a job <u>where speed of processing or attention to detail are significant job requirements.</u>" (*PageID#* 371)(underlining added). Thus, the ALJ's RFC finding adequately accommodated Dr. Smith's opinion by restricting Plaintiff to simple, repetitive tasks, and low stress work defined as work with no assembly line production quotas and work that is not fast paced.

The ALJ also reasonably rejected Dr. Smith's suggestion that Plaintiff should apply for disability benefits (i.e., that Plaintiff is disabled). (*PageID#* 85). In determining whether the ALJ acted properly in disagreeing with a medical source opinion, the Court first determines the medical source's classification. Of the three types of medical sources – nonexamining sources, nontreating (but examining) sources, and treating sources – Dr. Smith was the second. *See* 20 C.F.R. § 404.1502; *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with [him].'"). In contrast, Drs. Umana and Tishler were "nonexamining source[s]." *See Smith*, 482 F.3d at 875 ("A 'nonexamining source' is 'a

physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case.'").

The Social Security Administration gives the most weight to opinions from a claimant's treating source. In such cases, an ALJ is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." (*Id.*). However, this requirement only applies to treating sources. *Id.* at 876. With regard to nontreating, but examining, sources, the agency will simply "[g]enerally [ ] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" him. 20 C.F.R. § 404.1527(c)(1); *see also Smith*, 482 F.3d at 875. Because Dr. Smith should not have been afforded controlling weight, the ALJ – in order to determine how much weight to give Dr. Smith's opinion – should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty. *See* 20 C.F.R. § 404.1527(c).

In discussing Dr. Smith's opinion, in addition to above, the ALJ found that Dr. Smith's comment suggesting that Plaintiff apply for disability is an opinion reserved for the Commissioner. Furthermore, the ALJ properly found "Dr. Smith did not actually conclude that [Plaintiff] was disabled. In addition, his study did not show an individual who was disabled. There was one borderline IQ score, which was inconsistent with the

14

claimant's actual capabilities." Therefore, the ALJ reasonably assigned "little weight" to Dr. Smith's "suggestion." (*PageID#* 85).

The ALJ also properly considered Plaintiff's reported daily activities, his testimony, and the fact that no treating source concluded Plaintiff is disabled. (*PageID##* 82, 84-85)(referring to *PageID##* 269-73). For example, Plaintiff reported that he was able to care for his three minor children by himself while his wife worked, which included waking his children, preparing their breakfast, and driving his son to preschool. Plaintiff also indicated he handled household responsibilities such as cooking, cleaning, laundry, grocery shopping, paying bills, and taking his children to soccer practice and the library. (*PageID##* 269-73). Plaintiff's activities further support the ALJ's finding that his conditions were not as limiting as he claimed, and that he retained the mental ability to perform work consistent with the RFC finding. 20 C.F.R. § 404.1529(c)(3)(i)(ALJ may consider a claimant's activities in evaluating their subjective symptoms).

Thus, based on the record as a whole, the Court finds substantial evidence supports the ALJ's finding that Plaintiff had the RFC to perform work at all exertional levels with the non-exertional limitations set forth above, and was not entitled to DIB.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be affirmed; and,

2. The case be terminated on the docket of this Court.

October 8, 2013

                s/Sharon L. Ovington
                Sharon L. Ovington
              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).